**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| **INES PEREZ,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:07-CV-014-BI** |
| | § | **ECF** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS CASE** is before the court upon Plaintiff's complaint filed March 23, 2007, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on October 9, 2007, and Defendant filed a brief on November 8, 2007. On June 20, 2007, both parties consented to having the United States Magistrate Judge conduct any and all proceedings in this case pursuant to 28 U.S.C. § 636(c) (Doc. 24).

This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision is not supported by substantial evidence and should be remanded for further administrative proceedings.

# I. STATEMENT OF THE CASE

Plaintiff filed applications for disability insurance benefits and for supplemental security income benefits on February 4, 2002, with a protective filing date of December 20, 2001, for the SSI application, alleging disability beginning September 1, 1996. Tr. 19, 65-67. Plaintiff's applications were denied initially, on reconsideration, and in an Administrative Law Judge ("ALJ") decision dated July 22, 2003. Tr. 19, 51-55, 60-64. Plaintiff filed a timely request for review, and on August 24, 2004, the Appeals Council vacated the ALJ's decision and remanded this case for further proceedings. This case came for hearing before the ALJ on September 13, 2005. Tr. 19, 655-75. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 658-72. Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 672-74. In a prehearing brief, Plaintiff requested that her alleged onset date be amended to January 12, 1999. Tr. 19. The ALJ issued a decision unfavorable to Plaintiff on February 16, 2006. Tr. 16-32.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements only through June 30, 2000, and Plaintiff had not engaged in substantial gainful activity at any time since January 12, 1999. Tr. 20. Plaintiff has "severe" impairments, including impairment status-post a cervical fusion, cervical spondylosis, cervical radiculopathy, degenerative disc disease and bulging discs of her cervical and lumbar spine, obesity, diabetes, nephrolithiasis, diverticulosis, a possible vein occlusion or macro-arterial aneurysm of her right eye, impairment status-post laser surgery of her right eye, and major depression. *Id*. The ALJ found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual

functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 22.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. *Id.*

The ALJ found that Plaintiff had past relevant work as an assembly worker, laundry attendant, and home health aide. He found that the performance of this past work was not precluded by her medically determinable impairments. He found that Plaintiff retained the ability to perform the jobs of laundry attendant and assembly worker as she performed them and as they are generally performed in the national economy. The ALJ found that Plaintiff retains the ability to perform the home health aide job as she actually performed it. Tr. 31. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 32.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 25, 2006. Tr. 9. The Appeals Council denied Plaintiff's request and issued its opinion on January 22, 2007, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 6-8. The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 23, 2007, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.  STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case the ALJ found at step 4 that Plaintiff was not disabled because she was able to return to her past relevant work.  Tr. 31.

# III. DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to give proper weight to her treating physicians regarding the limitations imposed by her physical and mental impairments and failed to obtain the testimony of a medical expert, instead relying upon the opinions of the state agency medical consultants ("SAMCs"). Plaintiff argues that the ALJ's finding that Plaintiff can perform her past relevant work is thus not supported by the record, that the record is incomplete, and that remand is required.

## A.   Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

### 1.   Whether this case must be remanded because the record is incomplete.

Plaintiff alleges that remand is required in this case because the record is incomplete. She correctly notes that the transcript of the administrative record did not contain the transcript of the ALJ's September 13, 2005, hearing.

However, the court notes that the record has been supplemented with the transcript of the hearing before the ALJ. The record before the court is thus complete. Plaintiff's arguments regarding an incomplete record do not provide a basis for remand.

2.      **Whether the ALJ erred by failing to give appropriate weight to the opinions of Plaintiff's treating physicians.**

Plaintiff next argues that the ALJ erred by failing to give appropriate weight to the opinions of her treating physicians regarding the limitations imposed by her impairments. She notes that several of her treating physicians opined that she is "disabled."

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). Therefore, the ALJ was not required to give any special weight or significance to the statements of Dr. Michael Bailey or any other treatment provider indicating that Plaintiff was "disabled".

Plaintiff notes that Dr. Bailey completed a statement on September 7, 2004, indicating that she was permanently disabled. Tr. 468. This statement indicates a diagnosis of cervical and lumbar spondylosis but does not indicate any specific restrictions. *Id.* Dr. Bailey completed an RFC questionnaire on July 11, 2005. Tr. 596-601. He noted his diagnosis of degenerative disc disease

of the cervical spine and degenerative disc disease of the lumbar spine with radiculopathy. Tr. 596. Dr. Bailey noted that the signs, findings, and symptoms associated with these impairments included tenderness, muscle spasm, muscle weakness, lack of coordination, reflex changes, and reduced grip strength. *Id*. He noted by checkmark that Plaintiff had a "significant limitation of motion" but did not indicate Plaintiff's cervical range of motion. *Id*. He indicated by checkmark that Plaintiff had severe headaches, lasting approximately one hour, which were associated with vertigo, nausea, malaise, photosensitivity, inability to concentrate, impaired sleep, exhaustion, and other such symptoms. Tr. 597. He noted that Plaintiff experienced these headaches about once per week and that she would lie down, take medications, and use a hot or cold pack. *Id*. Dr. Bailey indicated that Plaintiff also experienced depression and anxiety, frequently experienced pain or other symptoms severe enough to interfere with attention and concentration, and was incapable of tolerating even "low stress" jobs. Tr. 598. He opined that Plaintiff could walk one city block, could sit for 30 minutes and could stand for 15 minutes at one time, and would be able to sit and stand/walk for less than two hours each during an 8-hour workday. Tr. 598-99. He also indicated that Plaintiff would need to walk every 15 minutes for about 10 minutes; would need to shift positions at will, take three to four unscheduled breaks of 10-minute duration during a workday to lie down or rest her head in a high back chair, and use a cane or other assistive device; should never lift even less than 10 pounds; should rarely look down, turn head to the right or left, look up, or hold head in static position; and should only rarely twist, stoop, bend, crouch/squat, climb ladders, or climb stairs. Tr. 599-600. He also indicated that Plaintiff should limit use of the hands, fingers, and arms to 10% each during an 8-hour workday. Tr. 600. He also indicated that Plaintiff would be absent about three days per month from work. *Id*.

Dr. Bailey noted on March 6, 2001, that Plaintiff reported continuing low back pain and leg pain. Tr. 295. He noted that Plaintiff's range of motion was mildly limited in right-side bending

-7-

and rotation, with a negative straight-leg raising on the right and some tenderness on the left. *Id*. He noted no evidence of muscle spasms and good sensory motor innovation in the lower extremities. *Id*. An MRI of the lumbar spine performed on April 26, 2001, indicated minimal degenerative disc disease at L3-4 and L4-5, without spinal stenosis or nerve root impingement. Tr. 292. Dr. Bailey noted some positive straight-leg raising. Tr. 293. Dr. Bailey treated Plaintiff for left upper quadrant abdominal pain on August 12, 2002. Tr. 379. On November 4, 2002, Dr. Bailey noted Plaintiff's report of mild tenderness in the lumbar spine, with negative straight-leg testing bilaterally, and deep tendon reflexes of 2/4 equal bilaterally. Tr. 376. Plaintiff underwent removal of the gallbladder on November 11, 2003. Tr. 496.

A progress note dated November 19, 2004, indicates that Plaintiff had some tenderness to palpation of bilateral trapezius muscles and along the paraspinal musculature of the thoracic spine. Tr. 591. Dr. Bailey prescribed Flexeril. *Id*. He noted that Plaintiff could move all extremities well. *Id*.

Plaintiff underwent a neurosurgical consultation by Mark S. Maxwell, D.O., on May 30, 2002. Tr. 148-49. Dr. Maxwell noted that Plaintiff reported tingling and dysesthesia in her left arm and pain in her neck since about a year after undergoing an anterior cervical discectomy and fusion at C5-6 and C6-7 in 1998. Tr. 148. He noted that an MRI performed on May 1, 2002, showed a mild to moderate narrowing at C4-5 and C5-6, somewhat more to the right than the left and with the worst being at C4-5. *Id*. Dr. Maxwell reported that the MRI showed evidence of the prior fusion, although "disc material and/or scar tissue and/or osteophyte continues to protrude into the canal at C5-6 somewhat and to a lesser degree at C6-7." Tr. 149. He opined that the tightest area on axial image was at C4-5 and C5-6 and was significant and tight enough to create myelopathic change. *Id*.

Dr. Maxwell opined that Plaintiff "is going to need decompression of the cervical spine without question from C4 to C6 and it is beginning to show compression of the cord and may in time become myelopathic and create quadriparesis." *Id*. Dr. Maxwell further indicated that "[i]t is clear . . . at this point, that she is beginning to develop myelopathic changes with weakness in both upper extremities and in her legs to some degree and compression of her spinal cord." *Id*. He indicated that Plaintiff "has more symptoms in her upper extremities and especially on the left, but is clearly beginning to see some changes in her legs as well and is having trouble with walking and doing simple activities." *Id*. Dr. Maxwell indicated that he considered Plaintiff "completely disabled because of the changes in her spinal cord and the beginnings of the quadriparesis we are beginning to see now." *Id*.

Dr. Maxwell noted that upon examination, Plaintiff had a decreased range of motion with limited extension and side bending. Tr. 148. He noted that the left biceps and triceps were somewhat weaker than the right; that she had a little bit less finger extension on the left than right, but the wrist extension was strong and her grip was good. *Id*. Dr. Maxwell noted that abduction of the fingers was good, reflexes were symmetrical, pinprick sensation was fairly intact, and there was no Tinel's signs. *Id*.

Plaintiff was also treated by Sandip V. Mathur, M.D. A progress note dated October 8, 1999, indicates Plaintiff's reports of pain and stiffness in her neck, with difficulty moving her head from side to side, and pain which was not relieved by a variety of analgesics. Tr. 170. On November 1, 1999, Dr. Mathur noted that Plaintiff continued to have severe cervical radiculopathy. Tr. 169. He indicated that Plaintiff was determined to get disability because of this problem. *Id*. The progress note dated November 15, 1999, indicates that Plaintiff has 4+ out of 5 weakness in the upper limbs but lower limbs are strong with 5/5 strength, normal tone, and brisk reflexes. Tr. 167. Dr. Mathur indicated that Plaintiff would be referred to Dr. Duarte for a second opinion. *Id*. On December 9,

1999, a progress note indicates a normal neurological exam. Tr. 166. Dr. Mathur's progress note dated March 30, 2000, indicates Plaintiff's report of tingling and numbness in her feet which is gradually getting worse, as well as neck pain that is also gradually getting worse. Tr. 165. He indicated his agreement with Dr. Luis Duarte's recommendation of physical therapy. *Id*. He also indicated that amitriptyline would be a good medication choice for her peripheral neuropathy, cervical radiculopathy, and difficulty sleeping. *Id*. Dr. Mathur indicated that upon examination, Plaintiff had normal bulk, tone, strength, reflexes, and coordination. *Id*. On July 11, 2000, Dr. Mathur noted that Dr. Loyola had recommended that Plaintiff be evaluated by the Texas Rehab Commission for eventual workforce placement and stated that this was a reasonable plan. Tr. 161. A progress note dated January 22, 2001, indicates a history of nick stiffness and pain radiating down the upper limbs and a decreased range of movement in the neck. Tr. 155. On April 17, 2002, Dr. Mathur opined that Plaintiff's diagnoses includes peripheral neuropathy, cervical radiculopathy, and cervical spondylosis. Tr. 153.

Plaintiff was also treated by Dr. Duarte. On January 5, 2000, Dr. Duarte noted that Plaintiff was scheduled for a four-week course of physical therapy. Tr. 236. A progress note dated February 16, 2000, indicates that Plaintiff had no weakness in the upper extremities, with symmetric deep tendon reflexes. Tr. 235. On April 26, 2000, Dr. Duarte noted that Plaintiff had pain that radiated to the upper extremities which resolved almost completely with physical therapy. Tr. 235. He noted that upon examination there was no true weakness of the upper extremities. He advised Plaintiff to increase her activities as tolerated. *Id*. Dr. Duarte noted on February 15, 2002, that Plaintiff was having some left elbow pain and tenderness along the brachioradialis muscle, but good motor and range of motion were observed. Tr. 281.

Walter X. Loyola, M.D., performed an anterior discectomy and fusion at C5-6 and C6-7 upon Plaintiff in 1998. Tr. 369. Dr. Loyola noted Plaintiff's complaints on February 18, 1999, of

discomfort in the base of the neck and between the shoulder blades and radiating numbness in both hands. *Id*. He noted that Plaintiff's main concern was applying for Social Security because she was not able to go back to work or do anything. *Id*. He noted that upon physical examination, he could not detect any specific neurological deficits, with foraminal closure test negative bilaterally, and with symmetrical deep tendon reflexes within normal limits. *Id*. Dr. Loyola noted after the MRI he ordered that the fusion appears to be stable with no evidence of foraminal stenosis on any level and with no evidence of nerve root compression or cord compression. Tr. 367. He indicated that he could not explain Plaintiff's symptoms and indicated that he would refer Plaintiff to a physical medicine and rehabilitation doctor for further care. *Id*.

Plaintiff was seen by Edward Brandecker, M.D., who opined that Plaintiff was not exhibiting any radiculopathy and referred her for physical therapy. Tr. 363-65. He noted full strength through the upper and lower extremities, with no focal weakness or atrophy, intact sensation, and normal tone. *Id*.

As previously noted, any opinions that Plaintiff is "disabled" are accorded no special weight. Plaintiff further argues that the ALJ erred by failing to give controlling weight to the opinion of Dr. Bailey, her treating physician, as to the limitations imposed by her impairments. Plaintiff argues that the symptoms and diagnosis indicated by Dr. Bailey in his July 2005 RFC questionnaire are supported by the record.

The record clearly demonstrates that Plaintiff underwent a cervical spine fusion in 1998 and has reported pain in her low back and neck. The record indicates that, at times, muscle spasms were noted upon examination by Dr. Bailey. However, the record, including Dr. Bailey's own treatment and progress notes, do not support the limitations indicated by Dr. Bailey in the RFC questionnaire forms he completed. First, the September 2004 questionnaire completed by Dr. Bailey indicates no specific activity restrictions. Tr. 468. Second, Dr. Bailey's treatment and progress notes

repeatedly indicate that Plaintiff moved and used her extremities well and do not indicate the severely limited ranges of motion noted in the questionnaire. Tr. 295 (full range of motion of the lower extremities and lumbar spine; mild limitation in right-side bending and rotation); 288 (moving all extremities well). The ALJ discussed the opinions of Dr. Bailey, extensively addressing the degree to which the questionnaires were supported by the evidence of the record, particularly Dr. Bailey's own treatment and progress notes.

The ALJ also discussed the degree to which Dr. Bailey's opinion was supported by the opinions and treatment and progress notes of other medical providers. The appropriate question is whether the decision of the ALJ and substantial evidence in the record show good cause for discounting the weight of Dr. Bailey's opinions regarding the functional limitations imposed by Plaintiff's impairments – that is, whether Dr. Bailey's evidence is "conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

The record establishes that Plaintiff experienced pain and limitation of range of motion, as well as some degree of positive straight-leg raising at some points in time. Such limitation may have been caused by her impairments directly or by lack of motivation and/or by subjective complaints of pain. Plaintiff's various treatment providers have noted differing symptomology and have had differing diagnoses. The ALJ noted that Plaintiff has exhibited tenderness, muscle spasm, and limitation of motion of her cervical and lumbar spine. Tr. 28. The record does not indicate the degree of limitation set forth in Dr. Bailey's opinions. The ALJ noted that Dr. Bailey opined that Plaintiff was severely limited in her ability to walk, sit, and stand, and, indeed, indicated that Plaintiff required an assistive device to ambulate, and he indicated that Plaintiff was severely limited in the use of her upper extremities. Tr. 599-600. Dr. Bailey also essentially indicated that Plaintiff could move her head or neck very little. These limitations are not supported by the evidence in the

record. The court finds that the ALJ adequately explained his reasons for discounting the opinions

of Dr. Bailey to the extent that such opinions were not consistent with the medical evidence of

record, including Dr. Bailey's own treatment and progress notes. The ALJ did not err in discounting

the opinions of Dr. Bailey regarding the limitations imposed by Plaintiff's impairments where such

opinions were conclusory and unsupported by the evidence. *See Newton*, 209 F.3d at 456.

> **3.      Whether the ALJ failed to appropriately consider Plaintiff's mental impairments.**

Plaintiff also alleges that the ALJ erred in evaluating her mental impairment and the

limitations resulting from those impairments. Plaintiff argues that the ALJ erred by failing to give

appropriate weight to the opinion of Dr. G. Alan Trimble regarding those limitations and regarding

Plaintiff's Global Assessment of Functioning ("GAF")[1] score. Plaintiff agues that the ALJ erred in

making his RFC assessment by failing to incorporate any limitations imposed by her mental

impairment, by failing to give appropriate weight to her treating physician's opinion regarding the

limitations imposed by this impairment, and by failing to appropriately consider the opinion of the

consultation examiner regarding her GAF score on Axis V[2] of 50[3].

The record indicates that Plaintiff underwent an examination by Dr. Trimble, on April 10,

2002. Tr. 302-06. Dr. Trimble noted Plaintiff's complaints of depression. Tr. 302-03. He noted

---

[1]      The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[2]      The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[3]      A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 324.

that Plaintiff reported that she once took an overdose in April of 2000 but also reported that she just forgot that she had taken her pills and took some more, making this accidental. Tr. 303. Dr. Trimble noted that Plaintiff's mood was depressed, affect was congruent with mood and situation, and Plaintiff was oriented; he noted no memory problems and indicated a very low fund of knowledge with poor insight, some psychomotor retardation of speech, and no disturbances of thought or perception. Tr. 304.

Dr. Trimble opined that Plaintiff's concentration, persistence, and pace were slightly impaired due to apparent psychomotor retardation in speech and some difficulty concentrating. Tr. 305. He noted that Plaintiff reported getting along with and communicating well with her family, friends, and people in general. *Id.* He opined that Plaintiff's diagnosis was major depressive disorder. Tr. 305.

Plaintiff argues that the GAF score assigned by Dr. Trimble indicates that she is "unable to hold a job." The court notes that Dr. Trimble's opinion of Plaintiff's GAF score of 50 does not represent a medical opinion regarding any specific limitations imposed by Plaintiff's mental impairment. Rather, it represents a tool he used in the course of his examination, diagnosis, and treatment. In any case, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

Dr. Bailey also completed a mental residual functional capacity questionnaire on July 11, 2005. Tr. 601-05. Dr. Bailey indicated that Plaintiff had depression with a poor prognosis. Tr. 601. He noted several symptoms by checkmark, including decreased energy, feelings of worthlessness, mood disturbance, incoherence, emotional withdrawal, motor tension, illogical thinking, memory impairment, and sleep disturbance, among others. Tr. 602. He indicated by checkmark that Plaintiff was unable to meet competitive standards in all mental abilities and aptitudes needed to perform all

skill levels of work which were identified on the form. Tr. 603-04. He also indicated that Plaintiff would be unable to manage her own benefits and would miss about four days of work per month. Tr. 605.

A treatment note dated June 11, 2001, by Dr. Bailey indicates that Plaintiff attempted overdose with Flexeril after becoming upset with her husband. Tr. 218. He noted that Plaintiff had not overdosed in the past and had not been treated for depression. *Id.* Dr. Bailey also indicated that Plaintiff "is only showing mild to moderate disc degeneration." *Id.* He noted his recommendation that Plaintiff be in treatment for depression and that a trial of an SSRI be started. *Id.* Dr. Mathur also noted that Plaintiff had depression. Tr. 153-54.

In his opinion the ALJ noted the evidence in the medical record as to Plaintiff's mental impairments. The ALJ found that under the part B criteria, Plaintiff's mental impairments moderately restricted her activities of daily living and created no more than mild difficulties in her ability to maintain social functioning; created moderate difficulties in maintaining concentration, persistence, or pace; had not led to any episodes of decompensation; and did not meet any of the part C criteria. Tr. 29-30. This finding is consistent with the opinion of Dr. Trimble, who noted that Plaintiff reported few problems with communicating or having contact with her family, friends, and people in general. This is also consistent with Dr. Trimble's reports of Plaintiff's daily activities (which include doing no household chores, reading a little, attending religious services, and limited grocery shopping) and his indication that Plaintiff's ability to cook, shop, and perform chores was "impaired due to chronic neck pain and lack of motivation," as well as his opinion that Plaintiff's concentration, persistence, and pace were "slightly impaired." Tr. 305. Dr. Trimble's opinions are also consistent with the opinions of the SAMCs, who noted moderate restriction in the activities of daily living; mild difficulties in maintaining social function; moderate difficulties in maintaining

-15-

concentration, persistence, and pace; and no repeated episodes of decompensation of extended duration. Tr. 319.

The ALJ noted that the medical evidence of record, including Dr. Bailey's own treatment and progress notes, did not support Dr. Bailey's indication in the July 2005 questionnaire that Plaintiff experienced marked mental limitations and symptoms. Tr. 30. The ALJ also correctly noted that Dr. Bailey is not a mental health professional, although he was Plaintiff's current primary care physician. The ALJ did not err in discounting Dr. Bailey's opinions on the limitations imposed by her mental impairment where such opinions were simply unsupported by the medical evidence of record. The ALJ also did not err by failing to find that Plaintiff is disabled on the sole basis of Dr. Trimble's opinion of Plaintiff's appropriate GAF score. As noted above, the GAF does not necessarily indicate disability; it is a useful treatment tool which may be considered with other evidence of record. The ALJ's RFC assessment includes limitations on jobs requiring extended concentration, thus limiting Plaintiff to jobs with a reasoning level of 1-3 as defined by the *Dictionary of Occupations Titles* because of Plaintiff's history of pain, depression, and a fifth grade education. Dr. Trimble's opinion indicating that Plaintiff's concentration was only slightly impaired is consistent with this RFC finding.

The ALJ similarly did not err in failing to give controlling weight to the opinion of Dr. Maxwell. Dr. Maxwell, who examined Plaintiff on one occasion, opined that Plaintiff would require additional surgery and that her condition was quite serious. As the ALJ noted, Dr. Maxwell's opinions were inconsistent with the opinions of Plaintiff's treating physicians and other treating specialists.

In his opinion the ALJ extensively discussed the evidence of record – comparing the findings and opinions of the various treatment providers and noting the degree of consistency among such

opinions.  The ALJ considered all of the evidence of record and did not "'pick and choose' only the evidence that supports his position."  *Loza,* 219 F.3d at 393.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE or into the RFC finding that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is  most supported by the record."  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  *Muse*, 925 F.2d at 790.

However, there must be evidence in the record to support the ALJ's RFC determination.  The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p").  The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original).  The ALJ is responsible for determining a claimant's RFC.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record.  SSR 96-8p.  As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

This ruling further provides that exertional capacity involves seven strength demands and that each function must be considered separately. The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. Social Security Ruling 96-9p provides that the RFC assessment is a function-by-function assessment.

The regulations further provide:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(a).

The ALJ found that Plaintiff could perform such work, subject to the noted non-exertional limitations.

In this case the ALJ did not accept the limitations noted by Dr. Bailey, Plaintiff's treating physician. As noted above, he demonstrated good cause for discounting the weight accorded to such opinions. The ALJ found that Plaintiff retained the RFC to perform a limited range of work at the medium exertional level, limited to jobs requiring a reasoning development level of 1 to 3 and requiring only occasional stooping and crouching and limited to jobs which can be performed with no functional vision in one eye. Tr. 21. The ALJ noted that Plaintiff should not stoop or crouch only occasionally because of the pressure such activities can put on her neck and because of her

history of back pain.  Tr. 23.   This finding is consistent with both Dr. Bailey's assertion that

Plaintiff should only occasionally stoop or crouch and is also consistent with the opinions of the

SAMCs.

However, the ALJ found that the evidence "clearly indicates she has been able to stand and

walk for prolonged periods" and specifically found that Plaintiff can stand and walk at least six

hours of an 8-hour workday and can sit at least six hours during an 8-hour workday.  Tr. 23.

While the ALJ correctly noted that the record indicates that Plaintiff can stand and walk

independently, the record does not contain sufficient evidence to show that Plaintiff can meet the

exertional requirements of work at the medium level.  The record indicates that Plaintiff was not

active at home and performed very few household chores.  While this lack of activity may have been

attributable in some part to lack of motivation as well as pain, Plaintiff's activities, either as reported

by her treatment providers or as related in her testimony, do not demonstrate that Plaintiff is able

to stand and walk for at least six hours during an 8-hour workday, nor is there anything in the

medical record, other than the information indicating that she retained the use of her extremities, that

indicates that she can, indeed, lift 10 pounds.   Plaintiff testified that she lies down for several hours

during the day.  Tr. 640.  She testified that she cannot lift a gallon of milk.  Tr. 641.  The record

indicates that she has been assisted with household chores and shopping by a home health aide for

some years.  The SAMCs opined that Plaintiff could lift up to 50 pounds, but the record contains no

specific evidence, either in the form of a medical opinion or as reflected in Plaintiff's testimony or

assertions, indicating that Plaintiff was able to meet the exertional  demands of even light level

work.   While the ALJ did not err in discounting the opinion of the treating physician, Dr. Bailey,

or in rejecting the opinion of Dr. Maxwell, and while he appropriately set forth his reasons for his

credibility finding, he did not point to anything in the record to support certain parts of his RFC

finding.   The Appeals Council had previously remanded this case for additional administrative

proceedings and included a request for further development of the record to show what Plaintiff can do. The ALJ rejected the RFC questionnaires completed by Dr. Bailey, showing good cause for doing so, but he failed to point to other evidence in the record to support his RFC finding. He placed great weight on the opinions of the SAMCs, but the consultants also failed to point to evidence in the record indicating Plaintiff's ability to perform the requirements of work at the light exertional level.

Having carefully reviewed the transcript of the record, it appears that the RFC finding is not supported by substantial evidence in the record insofar as there is no evidence in the record to show that Plaintiff can meet the requirements of lifting, sitting, standing, and walking, which are characteristic of the limited range of light work identified in the RFC finding. This matter should thus be remanded for further administrative proceedings.

**4.      Whether the ALJ failed to properly evaluate Plaintiff's obesity.**

Plaintiff notes that the evidence of record demonstrates that she has suffered from obesity during the relevant time period. She notes that the ALJ indicated that she was obese in his opinion but argues that he failed to otherwise evaluate her obesity as a medically determinable impairment in the manner required by the Social Security Ruling 02-01p (September 12, 2002) ("SSR 02-1p") and failed to ascribe any specific limitations to this impairment in formulating his RFC finding.

In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. See 20 C.F.R. § 404.1523. *Loza*, 219 F.3d at 393. If the ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process." *Id*.

SSR 02-01p was adopted when § 9.09 of the Listing of Impairments applying to obesity was deleted because cases under this listing "indicated that the criteria in the listing were not appropriate indicators of listing-level severity" and "the criteria in listing 9.09 did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." SSR 02-1p. Under this Ruling, the Commissioner will not make assumptions about the severity or functional effects of obesity combined with other impairments. *Id.* Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *Id.* Evaluation in each case is based on the information in the case record. *Id.* When obesity is identified as a medically determinable impairment, the Commissioner will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments identified. *Id.*

In his opinion the ALJ found that Plaintiff's severe impairments included obesity. He did not set forth any specific limitations attributed to this impairment. While SSR 02-1p specifically notes that in cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity, there is no evidence in the record to demonstrate that Plaintiff's obesity, considered in combination with her mental and physical impairments, has increased the severity or functional limitations of such impairments. *Id.*

Plaintiff argues that the ALJ failed to consider or address any of the factors that SSR 02-01p requires in evaluating the impact of her obesity on her ability to work. However, none of these references in the record indicates that Plaintiff's obesity increased the functional limitations in combination with her other impairments beyond the degree recognized by the ALJ and incorporated into his RFC finding. *See* SSR 02-01p. While there are references in the record to her obesity, the record demonstrates that her medical providers urged Plaintiff to exercise and did not note any limitations imposed by her obesity, nor did they indicate that her obesity increased the functional

limitations imposed by her other impairments. While SSR 02-01p specifically notes that in cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity, there is no evidence in the record to demonstrate that Plaintiff's obesity, considered in combination with her mental impairments such as depression, has increased the severity or functional limitations of such impairment. *Id*. SSR 02-01p specifically notes that [t]he fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments. It means that they are at greater than average risk for developing the other impairments."

At step 2 obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. *Id*. The ALJ found that Plaintiff's obesity was a "severe" impairment. SSR 02-1p does not require the ALJ to make any assumptions about the severity or functional effects of obesity combined with other impairments, noting that obesity in combination with another impairment *may or may not* increase the severity or functional limitations of the other impairment and providing that in each case the determination of the effect of obesity is based on the information in the case record. SSR 02-01p does not, however, require the adjudicator to make any "assumptions about the severity or functional effects of obesity combined with other impairments." In fact, the ruling specifically provides that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment" and instructs the adjudicator to evaluate each case based on the information in the case record. *Id*.

The record includes a glucose test ordered by Dr. Mathur, dated May 2, 2002, indicating borderline test results, and further indicated that Plaintiff may develop diabetes and should lose weight, about 10 pounds, over the next six months and keep it off. Tr. 151.

Despite the extensive and detailed medical evidence provided by Plaintiff's examining and treating sources, the record contains no evidence demonstrating that Plaintiff's obesity, singularly or in combination, limited Plaintiff's ability to do basic work activities. Therefore, the court finds that the ALJ did not err in evaluating Plaintiff's obesity.

Plaintiff argues that the ALJ further erred in finding that she could perform her past relevant work. Having found that the RFC determination is not supported by substantial evidence, the court does not reach this issue.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the Commissioner's decision should be reversed and this case should be remanded for further administrative proceedings.

Upon remand, the ALJ should further consider Plaintiff's RFC.

**IT IS, THEREFORE, ORDERED** that the Commissioner's decision is **REVERSED** and this case is remanded for further administrative proceedings.

A judgment in accordance with this order shall be entered.

**SO ORDERED**.

DATED this 5th day of September, 2008.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**